## State of New Jersey

| | | |
|---|---|---|
| CHRIS CHRISTIE<br>*Governor* | OFFICE OF THE ATTORNEY GENERAL<br>DEPARTMENT OF LAW AND PUBLIC SAFETY<br>DIVISION OF LAW<br>25 MARKET STREET<br>PO BOX 112<br>TRENTON, NJ 08625-0112 | JEFFREY S. CHIESA<br>*Attorney General* |
| KIM GUADAGNO<br>*Lt. Governor* | | CHRISTOPHER S. PORRINO<br>*Director* |

October 23, 2012

VIA ELECTRONIC FILING AND OVERNIGHT DELIVERY

Hon. Karen M. Williams, U.S.M.J.
Mitchell H. Cohen Federal Courthouse, Room 2040
1 John F. Gerry Plaza
Camden, New Jersey 08101

    RE:   <u>Daniel Freid v New Jersey State Police</u>
           Dkt. No. 11-cv-02578 (RMB)

Dear Judge Williams:

<u>LETTER MEMORANDUM</u>

    I represent the individual defendants in the above referenced matter, the organizational defendant, New Jersey state Police, having been dismissed with prejudice. Presently returnable before the Court is plaintiff's motion to compel the deposition of Colonel Joseph R. Fuentes, Superintendent of the State Police. Plaintiff claims Colonel Fuentes' deposition is necessary because he "...is responsible for the State Police's lack of applicable policies regarding diabetes and is responsible for the State Police's failure to train the Troopers". (See Pltf. Brief, pg. 1).

    However, a thorough review of the claims made against the Colonel, as well as prior rulings of this Court in regard to some of those claims, makes clear that plaintiff's assertion is attenuated at best, and provides no support for compelling the



HUGHES JUSTICE COMPLEX • TELEPHONE: (609) 633-8687• FAX: (609) 777-3607
*New Jersey Is An Equal Opportunity Employer • Printed on Recycled Paper and Recyclable*

deposition of the Superintendent. Accordingly, it is requested that the Court accept this Letter Memorandum in opposition to plaintiff's request to compel the deposition of Superintendent Joseph R. Fuentes.

ARGUMENT

Discovery in federal litigation is guided by the provisions of Fed.R.Civ.P. 26. Generally, it provides for the obtaining of any non-privileged matter relevant to a party's claim or defense. Fed.R.Civ.P. 26(b)(1). However, it is not without its limits, which District Courts have been encouraged to enforce. Crawford-El v Britton, 118 S.Ct. 1584, 1587 (1998). Indeed, the Rule itself notes that all discovery is subject to the limitations noted in the provisions of Fed.R.Civ.P. 26(b)(2)©. See, Fed.R.Civ.P. 26(b)(1). There, the Court is admonished that it *must* limit discovery where it is unreasonably cumulative or duplicative or can be obtained from another source that is more convenient or less burdensome or where the burden outweighs the likely benefits, considering a number of enumerated factors. (Emphasis added). Moreover, the Court is specifically empowered to issue a protective order excluding disclosure or discovery completely, or limiting it in some other fashion, where it finds good cause to do so based on considerations of annoyance, embarrassment, oppression or undue burden or expense. Fed.R.Civ.P. 26(c)(1)(A-H).

Here, plaintiff seeks to take the deposition of the Superintendent of the State Police on the basis that his alleged failure to have "applicable policies regarding diabetics" directly caused this incident to occur or led to the injuries allegedly suffered by the plaintiff. For the following reasons, defendants will demonstrate the paucity of fact and law supporting this contention, making such a deposition not only burdensome, annoying and oppressive, but also futile and simultaneously urge this Court to deny this request in its entirety.

1. The Case(s) Cited by Plaintiff do not Support this Request

Plaintiff relies on the matter of Nyfield v Virgin Islands Tel. Corp., 202 F.R.D. 192, 194 (D.V.I. 2001) aff'd sub nom. Nyfield v Virgin Islands Tel. Corp., CIV. 1999-202, 2002 WL 169321 (D.V.I. Jan.. 29, 2002) to convince this Court that Colonel Fuentes deposition should be ordered. That case dealt with employment

matters where the plaintiff was allegedly illegally transferred and effectively terminated and that the corporate principal, as a named defendant, was personally involved in and approved the transfer which eventually led to the termination. The corporate principal moved for a protective order prohibiting or delaying the deposition and/or limiting its scope. The Court denied the motion. However, the Court's denial of the defendant's request for a protective order was decided for reasons not applicable here.

First, the <u>Nyfield</u> court noted that the defendant, Jeffrey Prosser, had never moved for dismissal of the claims against him in that suit. Such is not the case here. Plaintiff's original complaint (PACER DOC. No. 1) named only the State Police as a defendant. Thereafter, a Motion to Dismiss, pursuant to Eleventh Amendment immunity, was filed by this office. (PACER DOC. No. 9). Plaintiff then filed an Amended Complaint in which Colonel Fuentes was named in his official and "personal" capacity. (PACER DOC. No. 10). In order to avoid further motion practice on the Eleventh Amendment and 42 <u>USC</u> §1983 as it would apply to the Colonel in his official capacity and as a "person" under that statute, the Court directed the plaintiff and these defendants to reach an accommodation concerning that issue that would otherwise be inevitable. Accordingly, pursuant to a CONSENT ORDER OF DISMISSAL, the State Police were dismissed, with prejudice, and Colonel Fuentes, along with troopers Teztlaff, Oliver and Brown, were dismissed, without prejudice, regarding claims made in their official capacities. (PACER DOC. No. 27).

Next, exhibits attached to the plaintiff's opposition to the motion for the protective order demonstrated that Prosser would have had to personally approve the transfer and that he exercised "hands on control" of employment matters within the conglomerate. Here, plaintiff provides only the Amended Complaint which, at best, contains conclusory statements about the Colonel's connection to this case and that, only in vague references to, "policy, practice, customs and/or procedure...". Indeed, in those Counts of the Amended Complaint in which Colonel Fuentes is referenced, Counts IV and V, there is a plethora of reference to matters addressing use of force, fitness to serve as police officers, discipline, completing internal investigations and evaluating officer's performance, but not a single reference to, or the employment of the word "diabetes" in connection with the Colonel or his duties. Moreover, although plaintiff has named Colonel Fuentes in his "personal capacity" in the caption of the Amended Complaint, and sues him in his "individual capacity" (Am. Comp., pg. 3, ¶11), nowhere does plaintiff factually or actually personally connect the

Colonel to any of the incidents or occurrences giving rise to this matter. (Am. Comp., "FACTS", ¶¶21 to 59). Thus there is no "personal" basis upon which to demand this deposition as there was in Nyfield.

Third, it is clear from plaintiff's own Amended Complaint that Colonel Fuentes had no personal involvement in any of the actions involving the plaintiff, the incident, his arrest or his alleged injuries. Even the assertion that the Colonel is personally responsible for the "lack of applicable policies regarding diabetes", is nothing more than an assumption on plaintiff's part based on a self serving conclusion. Unlike the plaintiff in Nyfield, who provided the Court with specific evidence supporting that defendant's personal involvement in transfer issues and employment decisions, plaintiff here has supported his motion with only generalities, assumptions and conclusions. Since plaintiff presents no factual support for this motion, and, in fact, supports the Colonel's lack of personal involvement in his pleading, averment is neither necessary nor warranted. Moreover, the defendant in Nyfield was affirmatively seeking a protective order and thus, his burden was more substantial.

Finally, at issue in Nyfield was the specific motivation leading up to and generating the alleged illegal transfer and termination which was the basis for the lawsuit. Here, plaintiff's diabetes was, at best, an ancillary factor in plaintiff's arrest and charge of violation of N.J.S.A. 2C:33-2 (failing to comply with a lawful order) and N.J.S.A. 2C:29-2 (resisting arrest). Absent that behavior, no charges would have ever been filed. Moreover, on December 7, 2010, in the Municipal Court of Woodland Township, plaintiff stipulated to probable cause for the issuance of those complaints in exchange for a dismissal of the charges. (See Ex. A, transcript of municipal hearing). Plaintiff's acknowledgment that his behavior warranted the issuance of the citations focuses this matter on the precipitating causes, plaintiff's unlawful behavior.

2. Colonel Fuentes' Testimony about "applicable policies regarding diabetes" is both Unnecessary and Irrelevant Because Plaintiff was Asked These Questions at the Time and Denied Being a Diabetic and Because Plaintiff has Failed to Show that, Other than this Incident, a Same or Similar Incident has Occurred

Trooper Brown was the first State Police officer to encounter plaintiff on the night of the incident. He came upon plaintiff on State Highway 72 in the vicinity of milepost 4. Trooper Brown asked

plaintiff if he was okay but plaintiff did not respond. Brown inquired again and plaintiff replied, "What do you want"? Because of plaintiff's condition, Brown inquired if plaintiff was having a medical complication and wanted EMS dispatched to the scene. Plaintiff responded, "No"! After getting plaintiff out of his vehicle, Brown continued to inquire about plaintiff's condition but plaintiff refused to respond. Brown then asked if plaintiff was a diabetic to which plaintiff responded, "Yes, you didn't know that"? Brown then asked plaintiff if he took insulin and plaintiff responded, "Yes. No. I don't have diabetes, I told you that." (See Ex. B, Brown's Answers to Interrogatories).

Plaintiff does not dispute this exchange as he admits he has no recollection of the events of that day beginning shortly after leaving his summer home on Long Beach Island until he was laying in the back seat of the troop car after being arrested, approximately 15 to 18 miles later. (See Ex. C, plaintiff's deposition).

Accordingly, and plaintiff's contentions notwithstanding, there is no dispute that the initial trooper on the scene was both sensitive to and aware of the possibility of a medical condition and/or diabetes specifically, being a possible ingredient in the presentation made by plaintiff at the time of this encounter. His exploration of this possibility was timely, appropriate and specific. He did what he could with the conflicting and confounding information provided to him. Plaintiff has made no showing nor offered any proof or suggestion that the actions and inquiry of trooper Brown, or the results he got, would have been any different under any other set of circumstances. Subjecting Colonel Fuentes to a deposition about "applicable policies regarding diabetes" is both unnecessary and irrelevant in light of this unchallenged factual scenario.

In addition, plaintiff has presented nothing to show that beyond this one incident, the presence or absence, quantity or quality, frequency or timing of the presentation of "applicable policies regarding diabetes" is problematic or has any effect on the public with whom the troopers come into contact or how taking Colonel Fuentes' deposition on this subject will have any impact of any kind. Plaintiff offers no statistics, complaints, criticisms or lawsuits in which the State Police have been shown to be deficient, lacking or out of step with modern police practices. Quite to the contrary, the State Police, for the second time, were awarded accreditation by The Commission on Accreditation for Law Enforcement Agencies, on July 31, 2010. This accreditation is highly sought and prized in the field of law enforcement as it

recognizes maintenance of the highest standards, confirmed by independent, outside review. (See Ex. D, Certification and Letter).

3. Plaintiff was not Arrested and Charged Because He was a Diabetic or Suffering from Diabetic Shock. He was Arrested <u>Because He Refused to Obey Lawful Commands and Resisted Arrest</u>

As described in the interrogatory answers of trooper Brown, there was no attempt to restrain or interfere with plaintiff until he posed an apparent threat to the defendants by refusing to take his hands out of his pockets, attempting to push past the troopers to avoid a frisk search and violently resisting arrest. (See Ex. B). He admitted there was probable cause to lodge the charges ultimately brought against him. (See Ex. A). He does not dispute these underlying facts because he cannot; he has no memory of the events. (See Ex. C). Whether or not plaintiff was a diabetic or suffering a diabetic episode, it was his unlawful behavior, not his medical condition, that ultimately led to his arrest and charges. Once he embarked on this behavior, "applicable policies regarding diabetics" would have little if any application or relevance to the conditions then facing the troopers because their safety and well being had been compromised and threatened. Accordingly, requiring Colonel Fuentes to provide deposition testimony would be neither relevant nor necessary.

4. Plaintiff Cannot Meet the Requirement set by This Court for Reviving the Dismissed "Official Capacity" Claim Against Defendant Fuentes

Pursuant to this Court's Order of August 4, 2011, dismissing the "official capacity" claims, without prejudice, made against Colonel Fuentes, such claims could only be revived if "evidence is developed supporting a theory of liability in this regard under <u>Monell v Dep't. Of Soc. Services of New York</u>, 436 <u>U.S.</u> 658, 98 <u>S.Ct.</u> 2018 (1978). (PACER DOC. No. 27). Under that case, municipal liability under §1983 may not be proven under a *respondeat superior* theory of liability but must be founded on evidence that the government itself supported a violation of constitutional rights. <u>Id.</u>, at 690. Municipal liability exists only where execution of the municipality's policy or custom, whether made by lawmakers or decision makers whose edicts may fairly represent official policy, inflict the injury. <u>Id.,</u> at 694. Once a policy or custom has been shown to exist, it must then be shown that the allegedly

unconstitutional conduct causally results from that policy or custom. Natale v Camden Cnty. Correctional Facility, 318 F.3d 575, 584 (3rd Cir. 2003). Thus for a plaintiff to sufficiently allege municipal liability under §1983, they must present facts to support a finding that a specific policy or custom caused the alleged harm.

Further, where a failure to train is alleged, in order to satisfy Monell's requirement that a particular policy be the moving force behind a constitutional violation, there must be an affirmative link between the training inadequacies alleged and the constitutional violation at issue. Oklahoma City v Tuttle, 471 U.S. 808, 824-25, n.8 (1985).

Here, it has been shown that, regardless of plaintiff's allegations concerning the existence of, training on or knowledge about, "applicable policies regarding diabetes", this issue specifically, and plaintiff's medical condition generally, was addressed and inquired about by trooper Brown, several times, in his initial interaction with plaintiff. In the face of this, plaintiff's claims about the insufficiency or inadequacy of training, policies or procedures concerning the awareness of diabetics and their medical problems ring hollow, undercutting plaintiff's claims about the necessity for Colonel Fuentes to offer deposition testimony on this subject. Most importantly, plaintiff cannot argue that Monell provides even the slightest support for revival of any "official capacity" claims made against the Colonel. Whether or not an "official" policy to plaintiff's liking exists, the reality is that plaintiff was questioned about and trooper Brown was aware of the issue of diabetes and its possible implication in this incident. Thus, plaintiff cannot show how a specific policy, or lack thereof, caused the alleged harm.

Furthermore, and crucial to the consideration of this issue, is that the troopers are not medical personnel empowered or qualified to make medical diagnosis. They are law enforcement officers who face unexpected, highly emotionally charged and life threatening situations that at any time can cause their death or permanent injury. Thus, to have their attention and focus diverted from their primary function of law enforcement to venture into the field of medical evaluation and prognostication on roadside stops or motorist aid calls could cause them to miss otherwise potentially fatal cues.

5. If the Issue is one of Training or Awareness of the Troopers Than Compelling the Testimony of an Officer Charged With Such

<u>Responsibilities Would be More Appropriate</u>

    Pursuant to <u>Fed.R.Civ.P.</u> 26(b)(1), 26(b)(2) and 26©, this Court is empowered to make whatever provisions it deems appropriate regarding discovery, its limitations, and necessary protections. Plaintiff demands the deposition testimony of Colonel Fuentes regarding policies, procedures and training of troopers in regard to the handling of diabetic persons with whom they come in contact. The Colonel, as Superintendent of the State Police, does not personally engage in the creation, formulation and delivery of instruction to the sworn members. He delegates this responsibility to others whose primary, if not sole function is concentrated in these areas. In addition to the reasons previously expressed as to why this Court should not compel the deposition of the Colonel on these areas, it seems more logical and potentially much more fruitful to explore this subject with someone whose function it is to formulate and instruct on the subject area. Accordingly, if it is truly the purpose of plaintiff to learn all he can about the creation, formulation and instruction of the State Police, it seems that end would be better served by taking the deposition of someone who is assigned those responsibilities.

CONCLUSION

    For all of the reasons expressed above, defendant Joseph R. Fuentes, Superintendent of the New Jersey state Police, requests that the Court deny plaintiff's request compelling his deposition.

                                   Respectfully submitted

                                   JEFFREY S. CHIESA
                                   ATTORNEY GENERAL OF NEW JERSEY

                    By: *Vincent J. Rizzo, Jr.*
                          Vincent J. Rizzo, Jr.
                          Deputy Attorney General

c: Katherine Robinson, Esq.

```
                                        October 23, 2012
                                               Page 9
```

```
                    Sincerely yours,

                    JEFFREY S. CHIESA
                    ATTORNEY GENERAL OF NEW JERSEY


              By:   _____
                    Vincent J. Rizzo, Jr.
                    Deputy Attorney General
```