NOT FOR PUBLICATION                          [Docket. No. 89]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

DANIEL J. FRIED,

     Plaintiff,

          v.

STATE TROOPER SR TETZLAFF,
STATE TROOPER BP OLIVER, AND
STATE TROOPER PE BROWN,

     Defendants.

Civil No. 11-cv-2578 (RMB/KMW)

**OPINION**

**APPEARANCES:**

Aaron Freiwald
Katherine Robinson
Layser & Freiwald
450 Sentry Parkway
Blue Bell, PA 19422
    Attorneys for Plaintiff

Michael Engallena
Vincent Rizzo, Jr.
State of New Jersey
Office of the Attorney General
RJ Hughes Justice Complex
25 Market Street
Trenton, NJ 08625
    Attorneys for Defendants

**BUMB,** United States District Judge:

I.  **Introduction**:

    This matter comes before the Court upon a motion by

Defendants, State Troopers Brown, Tetzlaff, and Oliver

(hereinafter "Defendants"), for summary judgment pursuant to

1

Federal Rule of Civil Procedure 56(a). [Docket No. 89].  This
Court has reviewed the parties' motion papers and heard oral
argument on this matter on March 13, 2013.  For the reasons set
forth below, Defendants' motion shall be granted in part and
denied in part.


## II.  Background:[1]

### Plaintiff's Diabetic Episode

The incidents giving rise to the instant case took place on
the evening of November 20, 2010 on New Jersey Route 72 West.
Defs.' SMF ¶ 1; Amended Complaint (Amend. Compl. ¶ 13 & 23).
Plaintiff, Daniel Fried, has suffered from diabetes since the

---

[1] The facts recited herein are drawn from the parties'
respective Rule 56.1 Statements of Material Facts, Defendants'
Response to Plaintiff's Statement of Material Facts, and
Plaintiff's deposition testimony. While there are factual
disputes between the parties' accounts, the facts are construed
in a light most favorable to Plaintiff, the non-moving party.
See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004).  This Court
notes that Plaintiff has made this task very difficult as he
failed to provide individual or detailed responses to
Defendants' Rule 56.1 Statement. For example, Plaintiff denies
facts clearly not in dispute as set forth on his Amended
Complaint - e.g., that the incident giving rise to the instant
matter took place on November 20, 2010 on New Jersey Route 72
West.  Compare Defs.' SMF ¶1 with Pl.'s Opposition to SMF #1 and
Amended Complaint at ¶¶ 13 & 23.  In order to properly form the
factual bases for this Opinion and construe facts in a light
most favorable to Plaintiff, this Court has drawn many of the
underlying facts directly from Plaintiff's own version of events
as contained in his deposition.  July 20, 2012, Deposition of
Daniel J. Fried, (hereinafter "Fried Dep.").

age of eight and takes insulin for his condition.[2] On the relevant date, Plaintiff left his shore house on Long Beach Island at about 5:30 p.m. and was driving towards a diner several miles away where he had planned to meet with family members. Fried Dep. at 74-75; DSMF ¶¶ 10-11. While driving, Plaintiff began to experience a diabetic episode and became "less than lucid very suddenly." Fried Dep. at 77:19-20.

<u>Plaintiff's Initial Interaction with the Troopers</u>

The Plaintiff was unequivocal in his deposition that he has no recollection whatsoever of his interaction with the State Police from the time of his initial encounter with them until he was placed in the back of the police car. Pl.'s Dep. 81:14-82:10; 91:14-18.[3] Therefore, the following facts are taken from accounts provided by the troopers on scene, from their

---

[2] Plaintiff argues in his brief that he was wearing a "Medic Alert" bracelet at the time of the incident. This statement is not supported by anything in the record, including Plaintiff's deposition. As an unsworn statement, this Court need not consider this as a fact in resolving the instant motion for summary judgment. <u>See</u> <u>Locascio v. Balicki</u>, 07-4834, 2011 U.S. Dist. LEXIS 66679 at * 6 (D.N.J. Jun. 22, 2011)("The Court must accept the nonmoving party's well-pleaded factual allegations as true and construe those allegations in the light most favorable to the nonmoving party, but the Court will disregard any unsupported conclusory statements.").

[3] <u>See</u> Pl.'s Dep. 82:6-10 "Q: You don't remember anything that happened between you and the troopers before you were in the backseat of the troop car trying to explain your situation to them?  A: No.").

depositions, and the Mobile Video Recorder ("MVR")[4] in Trooper

Tetzlaff's car, which picked up portions of the encounter.[5]

Trooper Brown was the first officer to arrive on the scene

and he was responding to an "erratic operator" call at

approximately 6:56 p.m.  Defs.' Ex. B, CAD Abstract,[6] and Ex. E,

Deposition of Trooper Paul Brown ("Brown Dep.") 37:12-20; Pl.'s

Resp. SMF 26-32.  When Brown arrived, Plaintiff's vehicle was

already pulled over to the side of the road.  Brown Dep. 37:21-

38:5; Pl.'s Resp. SMF 26-32.  Trooper Brown saw Plaintiff

jogging or moving fast out of the wooded area and enter his van.

Id. at 41:6-14; Pl.'s Resp. SMF 26-32.  Brown then approached

the van, identified himself, and asked Plaintiff if he was okay,

but Plaintiff did not respond.  Id. at 45:17-21; Pl.'s Resp. SMF

26-32.  Plaintiff appeared to be nearly falling asleep and, as a

result, Brown suspected that Plaintiff might be having a medical

issue or might be intoxicated, although he did not smell

alcohol.  Id. at 47:2-11; 48:23-49:10; 52:17-20; Pl.'s Resp. SMF

26-32.  Intoxication includes substances other than alcohol.

Id. 54:1-7; Pl.'s Resp. SMF 26-32.

Based on his observations, Brown asked whether Plaintiff

wanted him to call EMS and Plaintiff responded - "No."  Id. at

---

[4] The MVR tape is attached to Defendants' motion as Exhibit M.

[5] Trooper Brown's MVR was not recording properly.

[6] The CAD records time in military format - i.e., 18:56 p.m. - converted here to standard format for ease.

62:24-63:5.  During the interaction, it became clear that Trooper Tetzlaff was on route.  Id. at 65:1-11.  Brown asked Plaintiff to produce his driver's license but Plaintiff did not respond.  Id. at 68:4-22.  Because of Plaintiff's demeanor and because Brown felt it was safer, he asked Plaintiff to exit the vehicle.  Id. at 71:20-72:10.  Brown continued to assess the situation and question Plaintiff outside of the vehicle; he asked Plaintiff whether he had diabetes because he considered a diabetic problem a possibility.  Id. at 83:6-84:8.  In response, Plaintiff stated, "Yes. You didn't know that?" – and when asked if he took insulin, Plaintiff said "No. Yes. No.  I don't have diabetes.  I told you that."  Id. at 83:6-84:12.

Trooper Brown testified that after this exchange, he considered calling EMS but did not make the call at that point because:

> I still wasn't fully 100 percent sure of whether or not he was having a medical issue or if he was on some type of narcotic or whatever, but I also knew Trooper Tetzlaff was en route and I felt safer knowing that I was going to have backup there to help determine what was going on.

Id. at 92:10-93:8.  Plaintiff has submitted the report of Daniel Lorber, MD, an endocrinologist, in support of his contention that his behavior at the scene is consistent with the signs of hypoglycemia.  Pl.'s Ex. F, Lorber Report.  At his deposition, Dr. Lorber opined that the manifestations of hypoglycemia is

"tremendously variable and individual."  Defs.' Ex. G. Lorber
Dep. 38:1-6.

   Trooper Tetzlaff then arrived at the scene at approximately
7:07 p.m.  Defs.' Ex. B.  Tetzlaff's MVR was functioning and
captured audio of the remaining encounter.[7]  After his arrival,
Brown only told Tetzlaff that he thought Plaintiff might be
drunk and was giving him the "runaround" because Plaintiff was
not answering his questions.  Id. at 104:20-24.  Brown did not
say anything to Tetzlaff about diabetes.  Defs.' Ex. F,
Deposition of Trooper Tetzlaff ("Tetzlaff Dep.") at 57:19-22.
When Tetzlaff approached Plaintiff, Plaintiff was standing still
towards the front of his van and Tetzlaff asked Plaintiff what
was going on.  Tetzlaff Dep. at 77:14-78:9.  Plaintiff began
walking towards Tetzlaff, who asked Plaintiff to take his hands
out of his pockets to which the Plaintiff responded, "Why?"  Id.
at 84:10-19.  Tetzlaff responded "Because you're making me
nervous," and Plaintiff responded "Well you're making me
nervous."  Id. at 84:15-22.  Plaintiff then took his hands out
of his pockets and then put them back in and started to walk
towards Tetzlaff.  Id.

   At this point, Tetzlaff grabbed Plaintiff by his arms in
order to gain control of his hands for fear that he was going to

---

[7] The video was also functioning but the camera was not
pointed in the direction of the interaction.

"secrete" [sic] or pull out a weapon.  Id. at 89:11-16.  Because
Plaintiff had his hands in his pockets and "wouldn't listen to
him," Tetzlaff stated that he grabbed Plaintiff's arm, spun his
body counter clockwise and brought Plaintiff's left arm towards
him.  Id. at 130:7-13.  Tetzlaff states that the Plaintiff
lunged forward and pulled Tetzlaff on top of him.  Id. at
133:15-134:4.  Tetzlaff put his foot in front of the Plaintiff
to trip him and bring him to the ground.  Id. at 135:11-15. Per
the MVR tape, one of the officers can be heard during this
struggle saying "stop resisting."  Defs.' Ex. M.  As the
struggle progressed, Trooper Brown used his baton to strike the
Plaintiff and gain control.  Tetzlaff Dep. at 139:18-21.  Brown
testified he struck Plaintiff once in the leg, Brown Dep. 138:8-
11, though Tetzlaff testified he thought it was "more than
once."  Tetzlaff Dep. 140:8-13.

In response, to Tetzlaff's and Brown's version of events,
Plaintiff contends that there were "no bulges in Mr. Fried's
pockets that could have been a weapon."  Pl.'s Br. at p. 11.
Plaintiff also disputes that he pulled Tetzlaff on top of him,
and instead refers to a section on the MVR where Tetzlaff can be
heard stating, "He went over like a house of cards when I jumped
on him."  Defs.' Ex. M, Video 6.  Plaintiff can also be heard
on the MVR tape during the arrest saying, "You're hurting my

arm." Id.  Again, this Court must accept the facts in a light most favorable to Plaintiff for purposes of this motion.

Once the Troopers secured the Plaintiff, he was read his Miranda rights and brought to the back of Tetzlaff's vehicle. Trooper Brown notified dispatch that Plaintiff had been placed under arrest at approximately 7:10 p.m.  Defs.' Ex. B. Plaintiff contends that as a result of this incident he sustained cuts on his face, arms and chest and that his left wrist was broken.  Fried Dep. 99:20-101:18.

### Plaintiff Moves to Police Car and Medical Treatment[8]

While in the back of the car, Plaintiff told the Troopers he was a diabetic and needed medical treatment.  Fried Dep. 97:8-23; Tetzlaff Dep. 154:12-15.  At 7:18 p.m., EMS was requested by the Troopers for a "diabetic emergency." Defs.' Ex. B.  Plaintiff testified that he asked the Troopers to get juice from his car but they refused.  Fried Dep. 92:20-24.  Tetzlaff testified and the MVR tape reflects, however, that he looked in the car but was only able to find a bag of fruit.  Tetzlaff Dep. 159:1-10; Defs.' Ex. M ("Will bananas do the same thing, I can't find any juice in his car."). Once the ambulance arrived,

---

[8]    Plaintiff has stated that he was aware of what was happening as of the time he was in the back of Tetzlaff's car. Fried Dep. 81:19-23.

Plaintiff was transported by Woodland EMS to Southern Ocean
County Hospital for treatment.

Plaintiff's Injuries

Plaintiff states that his left wrist was broken during the
arrest.  Fried Dep. 96:13-17.  The records from Woodland EMS and
Southern Ocean County Hospital contain no information whatsoever
regarding Plaintiff's alleged broken wrist or wrist pain.
Defs.' Exs. I & J.  Notably, portions of those reports state
that Plaintiff reported a pain level of 0/10 and had "small
scrape on face not any other injury."  Id.  Plaintiff provides
the report of Dr. Sanford Davne, dated November 20, 2012, in
support of his contention that his wrist was fractured during
his interaction with the police on November 20, 2010.  Pl.'s Ex.
E.  This report refers to records from Springfield Hospital from
November 21, 2010, showing a fracture, but Plaintiff has not
provided this Court with the Springfield Hospital record.  For
purposes of this motion, the Court will consider that
Plaintiff's left wrist was broken during the course of the
arrest.


**III. Standard:**

Summary judgment shall be granted if "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.

9

Civ. P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  Id.  When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).

However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial.  Anderson, 477 U.S. at 252.  Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them.  Scott v. Harris, 550 U.S. 373, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

10

answers to interrogatories, and admissions on file, together
with the affidavits, if any,' which it believes demonstrate the
absence of a genuine issue of material fact." <u>Celotex Corp. v.
Catrett</u>, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P.
56(c)).  Then, "when a properly supported motion for summary
judgment [has been] made, the adverse party 'must set forth
specific facts showing that there is a genuine issue for
trial.'"  <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P.
56(e)).  The non-movant's burden is rigorous: it "must point to
concrete evidence in the record"; mere allegations, conclusions,
conjecture, and speculation will not defeat summary judgment.
<u>Orsatte v. N.J. State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995);
<u>Jackson v. Danberg</u>, 594 F.3d 210, 227 (3d Cir. 2010)(citing
<u>Acumed LLC v. Advanced Surgical Servs., Inc.</u>, 561 F.3d 199, 228
(3d Cir. 2009)) ("[S]peculation and conjecture may not defeat
summary judgment.").


**IV.  Analysis:**

    As an initial matter, this Court notes that Plaintiff has
agreed to dismiss certain claims and, therefore, the Court will
not address those claims in this Opinion – i.e., 1) all claims
against Defendant Joseph Fuentes; 2) direct claims against the
New Jersey State Police; 3) claims against Troopers Brown,

Oliver, and Tetzlaff in their official capacities;[9] and, 4) all claims asserted against Trooper Oliver.[10]  Therefore, the only claims remaining in this case are asserted against Troopers Brown and Tetzlaff in their individual capacities.  With respect to the substance of these claims, only the following remain: 42 U.S.C. § 1983 claims for excessive force, state created danger, and deliberate indifference to a serious medical need, and related state common law claims for assault and battery.[11]

<u>State Created Danger Theory</u>

Plaintiff argues that he has presented a viable claim under 42 U.S.C. § 1983 pursuant to the "state-created danger theory." Pursuant to this theory, "liability may attach where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process."  <u>Morrow v. Balaski</u>, 719 F.3d 160, 177 (3d Cir. 2013). To state a claim based on such a theory, a plaintiff must show:

---

[9] <u>See</u> Pl.'s Opp. Br. at 15.

[10] Plaintiff conceded at oral argument that there are no viable claims remaining against Trooper Oliver.

[11] In his sur-reply, Plaintiff requested leave to amend his complaint to assert a false arrest claim. Pl.'s Sur-Reply at p. 4, n. 7.  If Plaintiff seeks to pursue this claim, a formal motion for leave to amend would be necessary at this juncture. <u>See</u> <u>Anderson v. Bondex Int'l, Inc.</u>, 2014 U.S. App. LEXIS 247 at * 7 (3d Cir. Jan. 7, 2014)("Federal Rule of Civil Procedure 15 provides, in the context relevant here, that 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'").

1) the harm ultimately caused was foreseeable and fairly direct;

2) a state actor acted with a degree of culpability that shocks the conscience;

3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Sanford v. Stiles, 456 F.3d 298, 304-05 (3d Cir. 2006) (citing

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006)

(internal quotation marks and footnotes omitted)).

As an initial matter, this Court notes that, as raised in the Defendants' reply brief, Plaintiff seeks redress for the force applied by the officers during the arrest pursuant to two theories: 1) under the Fourth Amendment for excessive force and, 2) under the Fourteenth Amendment state created danger theory. In other words, Plaintiff seeks two bites at the constitutional apple for the same conduct.

Plaintiff avers that summary judgment on the state created danger theory is not warranted because Plaintiff was harmed by the officers in that he suffered a broken wrist and permanent wrist injury.  Pl.'s Br. at 16.[12]  Plaintiff also cites to the

---

[12] To the extent that Plaintiff's alleged injury is the denial of medical care, that assertion is further discussed in a separate claim infra.

screaming on the MVR tape that can be heard during the arrest as evidence of the harm.  Id.  Despite Plaintiff's attempt, the law is clear that a "state-created danger claim cannot be predicated upon the force used to arrest the plaintiff."  Brice v. City of York, 528 F. Supp. 2d 504 (M.D. Pa. 2007).  As stated by the Supreme Court in Graham v. Connor, "all claims that law enforcement officers have used excessive force – deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process approach.'"  490 U.S. 386, 396 (1997). Therefore, because Plaintiff is seeking recovery for conduct that took place during the course of an arrest, his proper recourse is under the Fourth Amendment, not the state created danger theory; Defendants' motion for summary judgment will therefore be granted on this count.  See Graham, 490 U.S. 386; Brice, 528 F. Supp. 2d at 515 ("The 'elusive' conscious-shocking standard of the state-created danger doctrine is particularly ill-suited to split-second police conduct.").

Denial of Medical Care

     Plaintiff also contends that the Defendants deprived him of needed medical care.  Deliberate indifference to the medical needs of an arrestee constitutes a violation of the arrestee's

Fourteenth Amendment right to due process.  See Smith v. Gransden, 2014 U.S. App. LEXIS 1037 at * 8-9 (3d Cir. Jan 16, 2014)(citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003); Groman v. Twp. of Manalapan, 47 F.3d 628, 636-37 (3d Cir. 1995)).  To demonstrate deliberate indifference, a plaintiff must show: "(i) a serious medical need, . . . (ii) acts or omissions by [law enforcement] officials that indicate deliberate indifference to that need, and (iii) a causal connection between the indifference and the plaintiff's injury."  Smith, 2014 U.S. App. LEXIS 1037 at * 9 (internal citations and quotations omitted).

     The Third Circuit has held that "deliberate indifference is a subjective standard of liability consistent with recklessness as that term is defined in criminal law" and that a plaintiff "must therefore show that the police officers knew of the risk to [plaintiff] and disregarded it."  Gunter v. Twp. of Lumberton, 535 Fed. Appx. 144, 149 (3d Cir. Jul. 31, 2013)(internal quotations and citations omitted).  Notably, Plaintiff is claiming a delay, not a denial in medical care.  See Pl.'s Br. at 32-33.  As such, the "objective seriousness of the deprivation should . . . be measured 'by reference to the effect of the delay in treatment.'"  Mantz v. Chain, 239 F.

Supp. 2d 486, 504 (D.N.J. 2002) (quoting <u>Beyerbach v. Sears</u>, 49 F.3d 1324, 1326 (8th Cir. 1995)).

<u>Trooper Brown</u>

Construing the facts in a light most favorable to Plaintiff, summary judgment is warranted for Defendants as to Plaintiff's claim for denial of medical care.  Plaintiff cannot dispute that he contradicted himself in response to Brown's questions with regard to his medical condition, leaving Brown unsure as to whether Plaintiff was intoxicated or having a medical emergency.  Plaintiff has not provided evidence to this Court demonstrating that Brown definitively knew that Plaintiff was experiencing a diabetic episode and <u>deliberately</u> disregarded that fact.  As stated above, Plaintiff argues in his brief that he was wearing a "Medic Alert" bracelet at the time of the incident, but this statement is not supported by any evidence in the record whatsoever, including Plaintiff's deposition.  As an unsworn statement and mere argument of counsel, this Court need not consider this as a fact in resolving the instant motion for summary judgment.  <u>See</u> <u>Locascio</u>, 2011 U.S. Dist. LEXIS 66679 at * 6 ("The Court must accept the nonmoving party's well-pleaded factual allegations as true and construe those allegations in the light most favorable to the nonmoving party, but the Court will disregard any unsupported conclusory statements.").

16

Plaintiff also relies on the conclusions of his expert, Mr. Joseph Stine, a former police chief, in support of this claim. Mr. Stine states that "Trooper Brown was trained to know he should call EMS if he suspected a diabetic emergency."  Pl.'s Br. at 36.  However, the record is undisputed that Brown was unsure of whether Plaintiff was intoxicated or having a medical emergency.  Even Plaintiff's own medical expert, Dr. Lorber, opined that the manifestations of hypoglycemia are "tremendously variable and individual."  Defs.' Ex. G. Lorber Dep. 38:1-6.

While it may have been a violation of protocol for Brown not to call EMS immediately if he had a suspicion of a medical issue, see Stine Supplemental Report, Pl.'s Ex. D, Brown's conduct does not rise to the actionable level of deliberate indifference.  Plaintiff has not produced any medical evidence of how the delay of a total of 22 minutes, from the time Brown arrived on the scene to when EMS was called, caused him to suffer harm which he would not have suffered had the ambulance been called immediately other than to state in conclusory fashion that "[t]here is no dispute that Mr. Fried suffered during the time period he was waiting for medical attention." Pl.'s Br. at 33.[13]  Thus, Plaintiff's claim for denial of medical care must be dismissed as to Defendant Brown.  See Mantz, 239 F.

---

[13] As clarified during oral argument, the only harm alleged to be suffered by Plaintiff is "mental anguish" experienced while waiting for treatment.

Supp. 2d at 504-05 (denying denial of medical care claim where plaintiff "failed to provide any medical evidence, beyond his own subjective testimony, that Trooper['s]. . . alleged delay in responding to his demands for an ambulance caused him to suffer harm which he would not have suffered had an ambulance been immediately called to the scene."); Wade v. Colaner, No. 06-3715, 2009 U.S. Dist. LEXIS 23057 at * 35 (D.N.J. Mar. 20, 2009)(stating that "when considering a delay in obtaining treatment, courts should be mindful of the effects of the delay in treatment, i.e. the injury sustained by the arrestee as a result of the delay" and holding that delay in treatment where plaintiff suffered burns from pepper spray used by police did not constitute deliberate indifference).

Trooper Tetzlaff

Similarly, Plaintiff's claim of deliberate indifference fails as to Defendant Tetzlaff.  First, it is undisputed that Brown did not say anything to Tetzlaff about Plaintiff other than he thought Plaintiff might be drunk and that Plaintiff was giving him the "runaround."  See Brown Dep. at 104:20-24.  Once Plaintiff was in the back of Tetzlaff's car following the arrest and informed Tetzlaff of his diabetic emergency, an ambulance was called and Plaintiff promptly received medical treatment. While Plaintiff testified at his deposition that the ambulance was called because he "forced [the troopers] to provide [him]

18

with medical treatment," Fried Dep. 97:17-20, it is undisputed
that Tetzlaff arrived on the scene at approximately 7:07 p.m.
and an EMS unit was requested at approximately 7:18 p.m.  Defs.'
Ex. B.   Moreover, while Plaintiff avers that the troopers did
not try to find him juice, the MVR tape reveals that Trooper
Tetzlaff offered him fruit.  Defs.' Ex. M ("Will bananas do the
same thing, I can't find any juice in his car.").  This Court
will accept Tetzlaff's version offering fruit for purposes of
this motion.  See Scott v. Harris, 550 U.S. 372, 380
(2007)("[w]hen opposing parties tell two different stories, one
of which is blatantly contradicted by the record, so that no
reasonable jury could believe it, a court should not adopt that
version of the facts for purposes of ruling on a motion for
summary judgment.").

Based on the above, this Court finds that no reasonable
jury could find that Trooper Tetzlaff was deliberately
indifferent to Plaintiff's medical needs.  Again, Plaintiff's
own allegations as to the "damage" caused by the delay in
receiving care does not suffice at the summary judgment stage.
See Mantz, 239 F. Supp. 2d at 504-05 (granting summary judgment
on medical care claim under similar circumstances); see also,
Wade, 2009 U.S. Dist. LEXIS 23057 at * 35 (granting summary
judgment in delay of medical care claim for lack of deliberate
indifference where plaintiff suffered pepper spray burns).

Excessive Force & Common Law Claims

Under both federal and New Jersey law, a claim that excessive force was used during an arrest requires that a plaintiff show that a law enforcement officer used force that was unreasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 396 (1989)(federal law); Hanson v. United States, 712 F. Supp. 2d 321, 329-30 (D.N.J. 2010)(New Jersey state law). And, in determining the reasonableness of force used, courts balance the government interests at stake against the intrusion on the individual's Fourth Amendment rights. Graham, 490 U.S. at 396; Hanson, 712 F. Supp. 2d at 330 (indicating that New Jersey courts look to the same factors as laid out in Graham, 490 U.S. at 396). This analysis requires careful consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

Courts also consider "the possibility that the person subject to the police action [was] themsel[f] violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility

20

that the suspect may be armed, and the number of persons with
whom the police officer must contend at one time." Rivas v.
City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004)(internal
quotations and citations omitted).  In the Third Circuit, courts
take into account "all of the relevant facts and circumstances
leading up to the time that the officers allegedly used
excessive force." Rivas, 365 F.3d at 198 (citing Abraham v.
Raso, 183 F.3d 279, 291 (3d Cir. 1999)).

     Reasonableness "must be judged from the perspective of a
reasonable officer on the scene, rather than with the 20/20
vision of hindsight," since "police officers are often forced to
make split-second judgments in circumstances that are tense,
uncertain, and rapidly evolving." Ryburn v. Huff, 132 S. Ct.
987, 992 (Jan. 23, 2012)(quoting Graham, 490 U.S. at 396-97).
The Court must therefore conduct its balancing test in light of
the facts that were available to the officer at the time he
acted.  Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007)(citing
Maryland v. Garrison, 480 U.S. 79, 85 (1987)).


     Trooper Tetzlaff

     To determine whether an officer is entitled to qualified
immunity from suit, courts ask two questions: "(1) whether the
officer violated a constitutional right," and "(2) whether the
right was clearly established, such that it would have been

                              21

clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Lamont v. N.J., 637 F.3d 177, 182 (3d Cir. 2011)(quoting Saucier v. Katz, 533 U.S. 194, 201-02, (2001)(internal quotations and brackets omitted)).  The officer seeking to invoke qualified immunity has the burden of proving its applicability.  See Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010.  In this matter, the Court finds that Trooper Tetzlaff is entitled to qualified immunity as to Plaintiff's excessive force and common law assault and battery claims because his conduct was reasonable under the circumstances and, therefore, not a constitutional violation.

As stated by the Third Circuit, "even if an officer uses force that was objectively unreasonable, he may nevertheless be protected from individual monetary liability if he reasonably believed, based on the facts and circumstances known to him, that the force was lawful." Rivas, 365 F.3d at 201.  Construing all facts in favor of Plaintiff, it is undisputed that Tetzlaff was not aware when he arrived on the scene that Trooper Brown had any suspicion that Plaintiff might be having a medical emergency; all Tetzlaff was told was that Plaintiff might be drunk and was giving Brown the "runaround" because Plaintiff was not answering his questions.  Brown Dep. at 104:20-24.  Again, Brown did not say anything to Tetzlaff about diabetes.  Tetzlaff Dep. at 57:19-22.  It is further undisputed that Plaintiff put

22

his hands back in his pockets after being instructed to remove them and that Plaintiff was walking towards Tetzlaff when Tetzlaff grabbed the Plaintiff's arm and began the arrest.

Factors this Court has considered when making this determination of reasonableness include: the fact that Tetzlaff thought Plaintiff might pose an immediate threat to safety of the officers, the fact that the MVR tape reveals that Plaintiff resisted arrest, that the conduct at issue took place in the context of effecting an arrest, and the fact that Tetzlaff thought, though mistakenly, that Plaintiff may be armed.  See Graham, 490 U.S. at 396; Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).  Even assuming that Tetzlaff "jumped" on the Plaintiff's back to bring him to the ground, the MVR tape captures Plaintiff being told to "stop resisting."  Tetzlaff was also unsure of whether the Plaintiff was armed and, again, was totally unaware at that point that Plaintiff was having a medical emergency.

Plaintiff's expert report essentially asks this Court to deny summary judgment as to Tetzlaff because Plaintiff "was never asked to, or given the opportunity to comply with being arrested."  Pl.'s Ex. C at 12.  This Court, however, must judge Tetzlaff's actions from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See Gruver v. Borough of Carlise, No. 05-1206, 2006 U.S. Dist.

23

LEXIS 31448, * 11-13 (M.D. Pa. May 19, 2006)(finding that
officers did not apply excessive force where officers used a
taser gun during the course of an arrest of an individual having
a diabetic emergency but who appeared intoxicated).  In light of
what Tetzlaff encountered and his need for split-second
judgments, Tetzlaff is entitled to qualified immunity.  See
Saucier, 533 U.S. at 204 ("[i]f an officer reasonably, but
mistakenly, believed that a suspect was likely to fight back,
for instance, the officer would be justified in using more force
than in fact was needed."); Fennimore v. Lower Twp., No. 09-
2090, 2011 U.S. Dist. LEXIS 47948 at * 21-22 (D.N.J. May 4,
2011)("the undisputed record demonstrates, that the force
exercised by the Defendant Officers was objectively reasonable
and that the Officers' conduct did not violate Plaintiff's
constitutional rights. Thus, Defendants are entitled to
qualified immunity.").

     This same reasoning also applies to the common law claims
of assault and battery against Trooper Tetzlaff, which will also
be dismissed.  See Johnson v. De Prospo, No. 08-1813, 2010 U.S.
Dist. LEXIS 137938, at *19 (D.N.J. Dec. 30, 2010)(applying the
excessive force analysis to common law assault and battery
claims).

<u>Trooper Brown</u>

While it is true that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," (<u>Graham</u>, 490 U.S. at 396 (internal quotations and citation omitted)), there are disputed issues of fact that must be resolved by a jury with respect to the reasonableness of the force applied by Trooper Brown.  This includes, but is not limited to, how many baton strikes Brown applied.

Plaintiff's expert, Mr. Stine, has opined that the use of the baton was "excessive force and contrary to generally accepted practices and procedures for professional law enforcement officers." Pl.'s Ex. B at 13.  As discussed at oral argument, this Court agrees with Defendants that the legal conclusions contained in Plaintiff's expert report cannot be considered.  <u>See</u> <u>Patrick v. Moorman</u>, 536 Fed. Appx. 255, 258 (3d Cir. 2013)("Rule 704 . . . prohibits experts from opining about the ultimate legal conclusion or about the law or legal standards.").  While the sections of Plaintiff's reporting deeming the force applied "excessive force" must be disregarded, the Court can consider Stine's statement that Brown's use of the baton was contrary to generally accepted practices and procedures for law enforcement officers.

Even assuming that Brown struck Plaintiff only one time,
this Court finds that a reasonable jury could find that such
action constituted excessive force under the circumstances.
Brown had unconfirmed suspicions that Plaintiff might be having
a medical issue, including a diabetic episode.  Moreover, while
Plaintiff may have resisted arrest, there were two officers on
the scene versus Plaintiff, and Brown, due to his length of
interaction with Plaintiff, and unlike Tetzlaff, had less reason
to believe that Plaintiff could have been armed and/or
dangerous.  Thus, in light of the facts and circumstances known
to Brown at the time, a jury could conclude that his use of the
baton was unreasonable and in violation of Plaintiff's Fourth
Amendment rights.

Since the Court has found a genuine dispute of material
fact as to whether Brown used excessive force, it now turns to
the second prong of the qualified immunity analysis: whether it
would have been clearly established to a reasonable officer in
November 2010 that Brown's conduct was unlawful.  The Supreme
Court has clarified that conduct may be clearly established as
unlawful, even if "the very action in question [has not]
previously been held unlawful." Safford Unified Sch. Dist. # 1
v. Redding, 557 U.S. 364, 377 (2009) (quoting Wilson v. Layne,
526 U.S. 603, 615 (1999)).  "[E]ven as to action less than an
outrage, officials can still be on notice that their conduct

26

violates established law in novel factual circumstances." Id.
(quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002) (internal
quotations omitted)).

This is not a case where the law was in controversy at the
relevant time.  In 2010, the law was clear that an officer may
not assault an individual having a potential medical emergency
with a baton without adequate provocation.  See, e.g., Graham,
490 U.S. at 394 (recognizing a right under the Fourth Amendment
to be free from the use of excessive force); Weber v. Rodriguez,
07-2097, 2011 U.S. Dist. LEXIS 68772 at *19-20 ("in 2006, it was
well-established that beating a subdued arrestee was a
constitutional violation.").  Trooper Brown has not cited any
countervailing authority showing that a reasonable officer could
have believed his conduct comported with established legal
standards under these circumstances.  Accordingly, he has failed
to establish his entitlement to qualified immunity.

Therefore, Defendant's motion for summary judgment will be
denied as to Plainitff's claims of excessive force and assault
and battery against Trooper Brown as well as his assertion of
qualified immunity on the same.  See Johnson v. De Prospo, No.
08-1813, 2010 U.S. Dist. LEXIS 137938, at *19 (D.N.J. Dec. 30,
2010) ) ("Because there exists a genuine issue of material fact
as to whether the officers used excessive force, summary
judgment is denied on Johnson's assault and battery claim.").

**V.    Conclusion:**

For the reasons discussed above, this Court will grant summary judgment in favor of Defendants on all claims with the exception of Plaintiff's claims for excessive force and assault and battery against Trooper Brown.  An appropriate Order will issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: March 19, 2014