NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

DANIEL J. FRIED,

     Plaintiff,

        v.

STATE TROOPER SR TETZLAFF,
STATE TROOPER BP OLIVER, AND
STATE TROOPER PE BROWN,

     Defendants.

Civil No. 11-cv-2578 (RMB/KMW)

**OPINION**

**APPEARANCES:**

Aaron Freiwald
Katherine Robinson
Layser & Freiwald, P.C.
450 Sentry Parkway
Blue Bell, PA 19422
    Attorneys for Plaintiff

Michael Engallena
Vincent Rizzo, Jr.
State of New Jersey
Office of the Attorney General
RJ Hughes Justice Complex
25 Market Street
Trenton, NJ 08625
    Attorneys for Defendants

**BUMB,** United States District Judge:

### I.   Introduction & Procedural History:

    Plaintiff, Daniel Fried, has asserted claims for excessive
force pursuant to 42 U.S.C. § 1983 and related state law claims
for assault and battery.  This matter comes before the Court

1

following oral argument on the parties' respective in limine
motions, filed in anticipation of a trial set to begin on June
11, 2014.  Prior to the hearing on the motions in limine, this
Court decided a motion for summary judgment filed by Defendants
New Jersey State Troopers Brown and Tetzlaff.  The Court
granted, in relevant part, summary judgment in favor of
Defendant Tetzlaff on Plaintiff's excessive force claim on the
basis of qualified immunity. [Docket No. 103].[1]  This Court found
qualified immunity inapplicable as to Trooper Brown and denied
summary judgment on the excessive force claim asserted against
him.

During a June 5, 2014 oral argument on the pending in
limine motions, it became clear that there was general confusion
as to the exact nature of Plaintiff's excessive force claim with
respect to both Trooper Brown and Trooper Tetzlaff.  To resolve
the resulting confusion, this Court explored the breadth of
Plaintiff's claim during that hearing and requested that the
parties submit supplemental briefs to clarify their respective
positions on Plaintiff's excessive force claim.  The nature of
that confusion, and how it developed, is set forth on the

---

[1] For reasons discussed in the Court's prior Opinion, this
Court granted summary judgment in favor of both Trooper Brown
and Trooper Tetzlaff as to Plaintiff's § 1983 claims for
deliberate indifference to a serious medical need and pursuant
to a state created danger theory.  This ruling is not at issue
in this Opinion and will not be discussed.

record.  Suffice it to say that Plaintiff always believed he was articulating a broader allegation of excessive force against both Defendants.  Defendants viewed the allegation more narrowly.

For the reasons set forth below, this Court finds that it must reconsider its determination that Trooper Tetzlaff is entitled to qualified immunity on Plaintiff's excessive force claim because "[a] decision as to qualified immunity is 'premature when there are unresolved disputes of historical facts relevant to the immunity analysis.'"  Phillips v. County of Allegheny, 515 F.3d 224, 242 (3d Cir. 2008)(quoting Curley v. Klem, 298 F.3d 271, 277-78 (3d Cir. 2002)).  As will be discussed, oral argument on the pending motions in limine clarified that there are sufficient disputes of historical fact that must be resolved by a jury before this Court can make a proper determination as to Trooper Tetzlaff's assertion of qualified immunity.  See Grooms v. City of Philadelphia, No. 10-5178, 2012 U.S. Dist. LEXIS 143247 at *12 (E.D. Pa. Sept. 28, 2012)("determining what would have been clear to a reasonable officer in [the] situation requires a clear view of the situation.").

"A court may reconsider its prior decisions (accounting for the law-of-the case doctrine)[2] so long as it explains the reasoning behind its decision and takes the appropriate steps to ensure that the parties are not prejudiced by reliance on its prior ruling." Peters v. David, No. 07-2210, 2013 U.S. Dist. LEXIS 132106, at *6-7 (D.N.J. Sept. 16, 2013)(reappraising all submissions of record and recognizing that summary judgment should be granted as to federal claim). This Court has reexamined the record at length and will explain its reasoning behind revisiting the summary judgment decision below. See DeFranco v. Wolfe, 387 Fed. Appx. 147, 156 (3d Cir. 2010) (finding that the district court adequately explained its reasoning by "looking to applicable law, hearing transcripts, affidavits, documentary evidence, and its own prior rulings.").

Moreover, because this reconsideration has taken place immediately following oral argument clarifying the factual basis for Plaintiff's averments, but prior to decision on the parties'

---

[2] "[W]e note that the law of the case doctrine is 'an amorphous concept' that 'directs a court's discretion' but 'does not limit [its] power.'" Greene v. V.I. Water & Power Auth., 2014 U.S. App. LEXIS 2574, at *10-11, n. 7 (3d Cir. Feb. 11, 2014)(quoting Pepper v. United States, 131 S. Ct. 1229, 1250, 179 L. Ed. 2d 196 (2011) (citation omitted) (internal quotation marks omitted). "'Accordingly, the doctrine does not apply if the court is convinced,' as the court appears to have been convinced here, 'that its prior decision is clearly erroneous and would work a manifest injustice.'" Id. (quoting Pepper, 1341 S. Ct. at 1250) (citations omitted) (internal quotation marks and brackets omitted).

motions in limine or the commencement of trial, this Court finds
that the parties have not been prejudiced by its prior ruling.
See Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997)(finding
prejudice where a pre-trial ruling was only reversed "after
trial on the same record.") (emphasis in original).  This Court
has also offered the parties an opportunity to submit additional
briefing on the issue prior to rendering this decision.
Finally, this Court has postponed the trial.


**II.  Relevant Factual Background:**

  A) Factual Background on Summary Judgment

   This Court will briefly set forth the facts as considered
in this Court's prior summary judgment decision with respect to
Plaintiff's excessive force claim.

   The incidents giving rise to Plaintiff's claims took place
on the evening of November 20, 2010 on New Jersey Route 72 West.
Defs.' SMF ¶ 1; Amended Complaint (Amend. Compl. ¶ 13 & 23).
Plaintiff has suffered from diabetes since the age of eight and
takes insulin for his condition.  While driving, Plaintiff began
to experience a diabetic episode and became "less than lucid
very suddenly."  Fried Dep. at 77:19-20.

   The Plaintiff was unequivocal in his deposition that he has
no recollection whatsoever of his interaction with the Troopers
from the time of his initial encounter with them until he was

placed in the back of the police car.  Pl.'s Dep. 81:14-82:10;
91:14-18.[3]  Therefore, the Court took the facts in its summary
judgment motion from the accounts provided by the troopers on
scene, from their depositions, and the Mobile Video Recorder
("MVR")[4] in Trooper Tetzlaff's car, which picked up portions of
the encounter.[5]

Trooper Brown was the first officer to arrive on the scene
and he was responding to an "erratic operator" call at
approximately 6:56 p.m.  Defs.' Ex. B, CAD Abstract,[6] and Ex. E,
Deposition of Trooper Paul Brown ("Brown Dep.") 37:12-20; Pl.'s
Resp. SMF 26-32.  When Brown arrived, Plaintiff's vehicle was
already pulled over to the side of the road.  Brown Dep. 37:21-
38:5; Pl.'s Resp. SMF 26-32.  Plaintiff appeared to be nearly
falling asleep and, as a result, Brown suspected that Plaintiff
might be having a medical issue or might be intoxicated,
although he did not smell alcohol.  Id. at 47:2-11; 48:23-49:10;
52:17-20; Pl.'s Resp. SMF 26-32.

---

[3] See Pl.'s Dep. 82:6-10 "Q: You don't remember anything
that happened between you and the troopers before you were in
the backseat of the troop car trying to explain your situation
to them?  A: No.").
[4] The MVR tape was attached to Defendants' motion as Exhibit
M.
[5] Trooper Brown's MVR was not recording properly.
[6] The CAD records time in military format – i.e., 18:56 p.m.
- converted here to standard format for ease.

Based on his observations, Brown asked whether Plaintiff wanted him to call EMS and Plaintiff responded – "No."  Id. at 62:24-63:5.  During the interaction, it became clear that Trooper Tetzlaff was en route.  Id. at 65:1-11.  Brown asked Plaintiff to produce his driver's license but Plaintiff did not respond.  Id. at 68:4-22.  Because of Plaintiff's demeanor and because Brown felt it was safer, he asked Plaintiff to exit the vehicle.  Id. at 71:20-72:10.  Brown continued to assess the situation and question Plaintiff outside of the vehicle; he asked Plaintiff whether he had diabetes because he considered a diabetic problem a possibility.  Id. at 83:6-84:8.  In response, Plaintiff stated, "Yes. You didn't know that?" – and when asked if he took insulin, Plaintiff said "No. Yes. No.  I don't have diabetes.  I told you that."  Id. at 83:6-84:12.

Trooper Brown testified that after this exchange, he considered calling EMS but did not make the call at that point because:

> I still wasn't fully 100 percent sure of whether or not he was having a medical issue or if he was on some type of narcotic or whatever, but I also knew Trooper Tetzlaff was en route and I felt safer knowing that I was going to have backup there to help determine what was going on.

Id. at 92:10-93:8.  Plaintiff submitted the report of Daniel Lorber, MD, an endocrinologist, in support of his contention that his behavior at the scene is consistent with the signs of hypoglycemia.  Pl.'s Ex. F, Lorber Report.  At his deposition,

Dr. Lorber opined that the manifestations of hypoglycemia is "tremendously variable and individual." Defs.' Ex. G, Lorber Dep. 38:1-6.

Trooper Tetzlaff then arrived at the scene at approximately 7:07 p.m. Defs.' Ex. B. Tetzlaff's MVR was functioning and captured audio of the remaining encounter.[7] After his arrival, Brown only told Tetzlaff that he thought Plaintiff might be drunk and was giving him the "runaround" because Plaintiff was not answering his questions. Id. at 104:20-24. Brown did not say anything to Tetzlaff about diabetes. Defs.' Ex. F, Deposition of Trooper Tetzlaff ("Tetzlaff Dep.") at 57:19-22. When Tetzlaff approached Plaintiff, Plaintiff was standing still towards the front of his van and Tetzlaff asked Plaintiff what was going on. Tetzlaff Dep. at 77:14-78:9. Plaintiff began walking towards Tetzlaff, who asked Plaintiff to take his hands out of his pockets to which the Plaintiff responded, "Why?" Id. at 84:10-19. Tetzlaff responded "Because you're making me nervous," and Plaintiff responded "Well you're making me nervous." Id. at 84:15-22. Plaintiff then took his hands out of his pockets and then put them back in and started to walk towards Tetzlaff. Id.

---

[7] The video was also functioning but the camera was not pointed in the direction of the interaction.

At this point, Tetzlaff grabbed Plaintiff by his arms in order to gain control of his hands for fear that he was going to "secrete" [sic] or pull out a weapon.  Id. at 89:11-16.  Because Plaintiff had his hands in his pockets and "wouldn't listen to him," Tetzlaff stated that he grabbed Plaintiff's arm, spun his body counter clockwise and brought Plaintiff's left arm towards him.  Id. at 130:7-13.  Tetzlaff states that the Plaintiff lunged forward and pulled Tetzlaff on top of him.  Id. at 133:15-134:4.  Tetzlaff put his foot in front of the Plaintiff to trip him and bring him to the ground.  Id. at 135:11-15. Per the MVR tape, one of the officers can be heard during this struggle saying "stop resisting" and Plaintiff can be heard screaming.  Defs.' Ex. M.  As the struggle progressed, Trooper Brown used his baton to strike the Plaintiff and gain control. Tetzlaff Dep. at 139:18-21.  Brown testified he struck Plaintiff once in the leg, Brown Dep. 138:8-11, though Tetzlaff testified he thought it was "more than once."  Tetzlaff Dep. 140:8-13.

In response to Tetzlaff's and Brown's version of events, Plaintiff contends that there were "no bulges in Mr. Fried's pockets that could have been a weapon."  Pl.'s Br. at p. 11. Plaintiff also disputes that he pulled Tetzlaff on top of him, and instead refers to a section on the MVR where Tetzlaff can be heard stating, "He went over like a house of cards when I jumped on him."  Defs.' Ex. M, Video 6.   Plaintiff can also be heard

on the MVR tape during the arrest saying, "You're hurting my arm" and screaming.  Id.

Once the Troopers secured the Plaintiff, he was read his Miranda rights and brought to the back of Tetzlaff's vehicle. Trooper Brown notified dispatch that Plaintiff had been placed under arrest at approximately 7:10 p.m.  Defs.' Ex. B. Plaintiff contends that as a result of this incident he sustained cuts on his face, arms and chest and that his left wrist was broken.  Fried Dep. 99:20-101:18.  Plaintiff provides the report of Dr. Sanford Davne, dated November 20, 2012, in support of his contention that his wrist was fractured during his interaction with the police on November 20, 2010.  Pl.'s Ex. E.  This report refers to records from Springfield Hospital from November 21, 2010, showing a fracture, but Plaintiff has not provided this Court with the Springfield Hospital record.  For purposes of the motion for summary judgment, the Court considered that Plaintiff's left wrist was broken during the course of the arrest.

B) Summary Judgment Decision & Subsequent Clarifications

After hearing oral argument of the parties on the motion for summary judgment, and based on the above facts as contained in the parties' briefs, this Court reviewed Defendants' motion for summary judgment on the Plaintiff's 42 U.S.C. § 1983 claims for excessive force and related state common law claims for

10

assault and battery.  At that juncture, this Court, based on the framing of the issues by the Defendants and the response from the Plaintiff during oral argument, understood that the <u>only</u> force Plaintiff was alleging that the officers applied was Tetzlaff taking Plaintiff to the ground during the course of the arrest, which resulted in various scrapes and the breaking of Plaintiff's wrist, and Trooper Brown applying baton strikes to the Plaintiff an unspecified number of times.

As a result, this Court denied a grant of qualified immunity and summary judgment as to Trooper Brown finding, that based on Plaintiff's version of the facts, that there was sufficient evidence such that a reasonable jury could find that his actions constituted excessive force under the circumstances. With respect to Trooper Tetzlaff, this Court found that he was entitled to qualified immunity.  This decision hinged, in large part, on this Court's understanding (which appears from the briefing to have been the shared understanding of Defendants) that the only force alleged to have been applied by Tetzlaff was taking Plaintiff to the ground during the arrest, which, Plaintiff alleges, resulted in his left wrist being broken and lacerations.  [Docket No. 103 at 23-24]; <u>see</u> <u>also</u> June 5, 2014, Hearing Tr. 55:3-6 (Mr. Rizzo: "for three years that we've been doing this it has consisted of his left arm broke when he went

to the ground and Trooper Brown hit him in the leg with [a] baton.   That's it.").

   During oral argument on the motions in limine, however, Plaintiff clarified that this was not the set of facts Plaintiff relied on in support of his claims.   Instead, Plaintiff contends that he was "beaten" by the officers and that "[a] jury should decide how to interpret Plaintiff's screams and wails on Trooper Tetlzaff's MVR tape, [and] . . . could conclude that Plaintiff's screams were due to Trooper Tetzlaff and Trooper Brown's beating and use of excessive force upon Plaintiff."   [Docket No. 138, Plaintiff's Supplemental Submission, at 3]; see also June 5, 2014, Hearing Tr. 33:22-24 ("The MVR audio tape will show that Mr. Fried was wailing for well over a minute, wailing and screaming in pain.").

   In light of Plaintiff's assertions, this Court has re-reviewed the parties' original submissions on summary judgment, the transcripts of both the summary judgment oral argument from March 13, 2014 and the in limine hearing on June 5, 2014, and the supplemental submissions of the parties requested by this Court.   In doing so, it becomes clear that the Defendants, narrowly framing the claim, did not understand the exact nature of Plaintiff's excessive force claim and Plaintiff failed to adequately clarify the record at various times.   Based on the statements at oral argument and the submissions of the parties,

it is now evident that Plaintiff has alleged and has set forth
evidence to support his contention that the extent of the force
applied during the struggle between the Troopers and Plaintiff
is unclear.  That is not to say that Plaintiff is now presenting
an entirely new theory; the record contains the elements
supporting the Plaintiff's now clarified assertion.  See e.g.,
Pl.'s Summary Judgment Opp. Br. at 16 ("The MVR audio tape also
clearly and disturbingly documents Mr. Fried screaming in terror
and pain as he was being beaten by Trooper Tetzlaff and Trooper
Brown.); March 13, 2014, Hearing Tr. at 46:21-47:11 (Mr.
Freiwald: "I think that as to Trooper Tetzlaff, what raises a
jury question as to his own conduct is the amount of force that
he did use even given what preceded . . . with Trooper Brown. .
.based on the audio, which is pretty graphic, one might conclude
that there were additional strikes in connection with this
exchange.");  Plaintiff's Sur-Reply at n. 1 [Docket No. 100]
("There is ample other evidence to create substantial doubt as
to Defendants' story on crucial points.  The jury must be
permitted to serve its role as a fact finder[,]" and "[t]he jury
should watch and listen to the MVR and draw their own inferences
from it.").

       This Court (and the Defendants) previously misconstrued the
scope and extent of Plaintiff's allegations.  This Court now
properly understands the Plaintiff to be asserting that the

extent of the force applied during the "struggle" between the Troopers and the Plaintiff is unsettled beyond the mere question of the number of baton strikes.  Understanding the allegations correctly and having reviewed all the submissions, this Court finds that it must revisit its decision on summary judgment.

### III. Standard:

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  Id.  When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).

However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial.  Anderson, 477 U.S. at 252.  Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable

14

jury" could believe them.  <u>Scott v. Harris</u>, 550 U.S. 373, 380
(2007).  In the face of such evidence, summary judgment is still
appropriate "where the record . . . could not lead a rational
trier of fact to find for the nonmoving party . . . ."
<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
587 (1986).

The movant "always bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of 'the pleadings, depositions,
answers to interrogatories, and admissions on file, together
with the affidavits, if any,' which it believes demonstrate the
absence of a genuine issue of material fact." <u>Celotex Corp. v.
Catrett</u>, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P.
56(c)).  Then, "when a properly supported motion for summary
judgment [has been] made, the adverse party 'must set forth
specific facts showing that there is a genuine issue for
trial.'"  <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P.
56(e)).  The non-movant's burden is rigorous: it "must point to
concrete evidence in the record"; mere allegations, conclusions,
conjecture, and speculation will not defeat summary judgment.
<u>Orsatte v. N.J. State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995);
<u>Jackson v. Danberg</u>, 594 F.3d 210, 227 (3d Cir. 2010)(citing
<u>Acumed LLC v. Advanced Surgical Servs., Inc.</u>, 561 F.3d 199, 228

15

(3d Cir. 2009)) ("[S]peculation and conjecture may not defeat summary judgment.").

**IV.  Analysis:**

A) Excessive Force

Under both federal and New Jersey law, a claim that excessive force was used during an arrest requires that a plaintiff show that a law enforcement officer used force that was unreasonable under the circumstances.  Graham v. Connor, 490 U.S. 386, 396 (1989)(federal law); Hanson v. United States, 712 F. Supp. 2d 321, 329-30 (D.N.J. 2010)(New Jersey state law).  And, in determining the reasonableness of force used, courts balance the government interests at stake against the intrusion on the individual's Fourth Amendment rights.  Graham, 490 U.S. at 396; Hanson, 712 F. Supp. 2d at 330 (indicating that New Jersey courts look to the same factors as laid out in Graham, 490 U.S. at 396).  This analysis requires careful consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

Courts also consider "the possibility that the person subject to the police action [was] themsel[f] violent or

dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officer must contend at one time." Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004)(internal quotations and citations omitted).  In the Third Circuit, courts take into account "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force." Rivas, 365 F.3d at 198 (citing Abraham v. Raso, 183 F.3d 279, 291 (3d Cir. 1999)).

Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," since "police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving." Ryburn v. Huff, 132 S. Ct. 987, 992 (Jan. 23, 2012)(quoting Graham, 490 U.S. at 396–97). The Court must therefore conduct its balancing test in light of the facts that were available to the officer at the time he acted. Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007)(citing Maryland v. Garrison, 480 U.S. 79, 85 (1987)).

To determine whether an officer is entitled to qualified immunity from suit, courts ask two questions: "(1) whether the officer violated a constitutional right," and "(2) whether the right was clearly established, such that it would have been

17

clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Lamont v. N.J., 637 F.3d 177, 182 (3d Cir. 2011)(quoting Saucier v. Katz, 533 U.S. 194, 201-02, (2001)(internal quotations and brackets omitted)).  The officer seeking to invoke qualified immunity has the burden of proving its applicability.  See Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010).

"Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by a jury." Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).  Plaintiff has now elucidated for this Court that he contends that more happened during the struggle than him being taking to the ground by Tetzlaff and the baton strikes applied by Brown, as discussed above.  As alleged by Plaintiff, it is not apparent from the MVR tape what happened during the struggle between Plaintiff and the Troopers.  This Court agrees -- "[t]hese allegations, none of which are either established or definitively refuted by the [MVR] videotapes, present issues of material fact that must be resolved by a jury." Green v. New Jersey State Police, 246 Fed. Appx. 158, 161 (3d Cir. 2007); see Patterson v. City of Wildwood, 354 Fed. Appx. 695 (3d Cir. 2009)(finding that a jury might conclude that a videotape was inconsistent with or give rise to different inferences where the

videotape in question did not portray the actual incident);
Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir.
2003)(stating that where a decedent was unable to testify that
the court may not accept self-serving account by officer but
must also look to circumstantial evidence that, if believed,
could discredit the officer's story).

Because a jury must resolve the issues of fact with respect
to what happened during the struggle, this Court cannot render a
decision on qualified immunity as to Trooper Tetzlaff at this
time.[8]   See Prince v. Aiellos, No. 09-5429, 2013 U.S. Dist.
LEXIS 179756, at *20 (D.N.J. Dec. 20, 2013)("the Court has
concluded that there are material issues of fact in dispute as
to whether Defendant's actions . . . violated Plaintiff's
constitutional rights. It naturally follows that the Court
cannot determine, as a matter of law, whether a constitutional
violation has occurred for purposes of assessing Defendant's
entitlement to qualified immunity until such time as the
foregoing factual issues are resolved by the jury.").  Once the

_____

[8] In their supplemental submission, [Docket No. 139], the
Defendants append and rely upon evidence, including a
certification dated June 10, 2014, not previously submitted to
this Court.  To the extent consideration of this certification
would even be proper, which is doubtful in light of the fact
that such a certification would have been most properly
presented to this Court along with the original motion for
summary judgment, this Court nevertheless finds that the MVR
tape has created a material dispute of fact that must be
resolved by the jury.

jury has made the requisite factual determinations, this Court can proceed with the qualified immunity analysis. See Boardman v. Riverside Township, No. 04-5779, 2007 U.S. Dist. LEXIS 51411, at *11 (D.N.J. July 13, 2007)("this Court is unable to resolve the qualified immunity question without resolution of the underlying disputed factual issue of whether Plaintiff fled, resisted arrest, acted violently or whether he was actually struck repeatedly by [the officer.]").[9]

The Defendants are correct that changes to the Joint Final Pretrial order must be analyzed under the manifest injustice standard. Fed. R. Civ. P. 16(e). "Four criteria guide courts in deciding whether or not to modify a final pretrial order: (1) the prejudice or surprise in fact to the opposing party, (2) the ability of the party to cure the prejudice, (3) the extent of disruption of the orderly and efficient trial of the case, and (4) the bad faith or willfulness of the non-compliance." Jacob v. Nat'l R.R. Passenger Corp., 63 Fed. Appx. 610, 612 (3d Cir.

---

[9] Because of the issues of fact that must be determined by a jury prior to a determination on Trooper Tetzlaff's assertion of qualified immunity, this decision is not an immediately appealable collateral order. Barton v. Curtis, 497 F.3d 331, 336 (3d Cir. 2007)("Because the District Court denied summary judgment on the ground that there is a material issue of fact to be determined by the jury, the order falls within Johnson [v. Jones, 515 U.S. 304 (1995)] and is one of the limited instances in which this Court does not have jurisdiction to hear an appeal of summary judgment in a 42 U.S.C. § 1983 cause of action where the defendant is asserting qualified immunity.").

2003) (quotations omitted).  For the reasons already discussed above, this Court finds that Defendants should not be "surprised" because excessive force as a legal theory has already been included in the Final Pretrial Order and the evidentiary basis underlying Plaintiff's excessive force claim has not changed.  Any perceived "prejudice" can be cured by providing the parties time to prepare for trial in light of Plaintiff's clarified allegations.  While the commencement of trial has been delayed, this Court finds that the amending of the Final Pretrial Order leads to the most orderly and efficient trial of the case.  Finally, there has been no bad faith here.  Thus, this Court finds that failing to amend the Final Pretrial Order to include the outstanding issues of fact surrounding the struggle between the Defendants and the Plaintiff would result in a manifest injustice.

With respect to Trooper Brown, this Court already determined that, "even assuming that Brown struck Plaintiff only one time, this Court finds that a reasonable jury could find that such action constituted excessive force under the circumstances." [Docket No. 103 at 26].  Thus, this Court's qualified immunity decision as to Trooper Brown does not rely on the factual issues surrounding the MVR tape in the same manner as Trooper Tetzlaff because the facts, as previously set forth by the Plaintiff and Defendants, were sufficient for this Court

to make a determination on whether a reasonable jury could find a constitutional violation. To the extent a jury were to determine that there was additional force applied by Brown based on a review of the MVR, such a finding would only bolster this Court's prior determination.

B) Plaintiff's Assault and Battery Claims

As discussed during the June 5, 2014 oral argument, there is debate among the parties as to whether Plaintiff's assault and battery claims asserted pursuant to New Jersey law are viable in this matter.[10] Defendants contend that Plaintiff's assault and battery claims are barred because Plaintiff has admitted that he never filed the requisite New Jersey Tort Claims Act notice as required under N.J.S.A. 59:8-8.[11] The Defendants raised Plaintiff's failure to file a Tort Claims Act notice in their Answer, [Docket No. 38 at p. 22], as an

---

[10] See Defendants' Motion in Limine, Docket No. 133; June 5, 2014, Hearing Tr. 45:9-16; Docket No. 139, Defs.' Supplemental Submission at 15-21.

[11] As set forth in Williams v. City of Millville, No. 12-7540, 2014 U.S. Dist. LEXIS 33034, at *26 (D.N.J. Mar. 13, 2014):

> To state a claim under the TCA, "[n]o action shall be brought against a public entity or public employee . . . unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. § 59:8-3. That procedure requires a plaintiff to sign and file a notice of tort claim with the relevant public entity within 90 days from the accrual of the claim. Id. § 59:8-8. A plaintiff who fails to file notice within the 90-day period is "forever barred from recovering against [the] public entity or employee." Id.

22

affirmative defense, but did not move for summary judgment as to these state law claims on the basis of that affirmatively pled defense.  That said, this Court notes that the Joint Final Pretrial Order lists under "Plaintiff's statement of the legal issues in the case," that the Trooper's "legal responsibility is based on 42 U.S.C. § 1983," [Docket No. 112 at 20], and does not mention the common law claims.  See Phoenix Canada Oil Co. v. Texaco, Inc., 842 F.2d 1466, 1476 (3d Cir. 1988)("pretrial procedures provide the district courts with a useful tool to harness unwieldy litigation by simplifying the dispute and narrowing the issues for trial. For this reason, pretrial orders bind the parties unless modified by the court to prevent manifest injustice.")(citing Fed. R. Civ. P. 16(e)).

Plaintiff argues that the Defendants cannot assert that the common law claims are barred because Defendants have "waived" the argument.  [Docket No. 138, p. 2 (citing Severino v. Sayreville, 2008 WL 5351044 at *5 (D.N.J. 2008)].  Plaintiff does not, however, argue that Plaintiff filed, attempted to file, or sought leave of Court to properly file a Tort Claims Act notice.  See Hilburn v. Dept. of Corrections, No. 07-6064, 2010 U.S. Dist. LEXIS 15777, at *27 (D.N.J. Feb. 23, 2010)(noting that late filings are generally barred and that a party must seek the court's permission to file a late notice

providing sufficient reasons constituting "extraordinary circumstances" for failure to file a timely notice).

As an initial matter, this Court notes that other Courts within this District have deemed a failure to file the requisite notice to be jurisdictional and non-waivable.  See Gattas v. City of Jersey City, No. 07-4242, 2010 U.S. Dist. LEXIS 20590, *11, n.8 (D.N.J. Mar. 5, 2010)("The New Jersey Tort Claims Act notice provision is jurisdictional and cannot be waived."); see also, Canales v. Township of Toms River, No. 11-3159, 2014 U.S. Dist. LEXIS 21086, *97 (D.N.J. Feb. 20, 2014)("The filing of a timely notice of claim as a precondition to filing a lawsuit is a jurisdictional requirement."); Hilburn, 2010 U.S. Dist. LEXIS 15777, at *32 ("The absence of notice as required under the NJTCA is apparently a jurisdictional bar.").

To the extent that the notice requirement has been deemed by some courts as subject to the application of principles of equitable estoppel, "where the interests of justice, morality and common fairness dictate," Severino, 2008 U.S. Dist. LEXIS 103323, at *9, such interests warranting the application of estoppel are inapplicable here.  "Estoppel is permissible in the context of barring a defendant's defenses, if a state entity or other defendant's conduct leads the claimant to believe that the notice he or she did provide was satisfactory."  Hilburn, 2010 U.S. Dist. LEXIS 15777 at *32.  By affirmatively asserting that

Plaintiff failed to file the requisite notice in their Answer, the Defendants cannot be said to have, by their conduct, led the Plaintiff to believe that the Defendants were not objecting to Plaintiff's failure to follow the proper procedure.  Cf. Hill v. Bd. Of Ed., 183 N.J. Super. 36, 41 (N.J. App. Div. 1982)(applying equitable estoppel principles in NJTCA notice context where the defendant failed to properly plead noncompliance with the notice provision as an affirmative defense). Moreover, after receiving the Answer, Plaintiff did not seek leave of Court to file a late notice.

    Plaintiff presents no arguments in favor of equitable estoppel and, based on the circumstances discussed above, this Court finds that principle inapplicable here.  Moreover, the state law claims are absent from the Joint Final Pretrial Order as distinct legal theories, unlike the excessive force claim. See discussion supra at 21 (discussing lack of prejudice where claim was previously asserted in Final Pretrial Order).  As such, Plaintiff's common law tort claims are not viable in this matter due to Plaintiff's failure to file the required notice.

### V.   Conclusion:

    For the reasons discussed above, this Court will vacate its prior grant of qualified immunity in favor of Trooper Tetzlaff on Plaintiff's excessive force claim and defer a final determination on qualified immunity pending resolution of the

underlying facts by a jury.  The decision denying qualified

immunity as to Trooper Brown remains.  The parties shall confer

with the Honorable Karen M. Williams in order to discuss

amending the Joint Final Pretrial Order consistent with this

Opinion.  An appropriate Order will issue this date.

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE

Dated: June 24, 2014